Robert Edward JACKSON *v.* STATE of Arkansas

CR 94-343                                                883 S.W.2d 466

Supreme Court of Arkansas
Opinion delivered September 19, 1994

*McArthur & Finkelstein*, by: *Hugh Finkelstein*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal stems from a judgment of conviction for three counts of attempted first-degree murder in violation of Ark. Code Ann. § 5-3-201 (1987). The appellant, Robert Edward Jackson, was sentenced as a habitual offender to fifty years on each count with the three sentences to run con-

currently. His point on appeal is that the trial court erred in failing to suppress identifications of Jackson from two photographic spreads. We affirm.

Early in the evening of October 27, 1992, Jackson was beaten by several teenage boys at his house in Little Rock for allegedly raping a friend of theirs. Later that same evening, Jackson accosted three teenage girls, Merdina Hildreth, Allison Poindexter, and Carrie Nesbitt, who were standing near a street light and whom he associated with the boys who had beaten him. He forced the girls into an alley at gunpoint and shot each in the head with a pistol. He also shot Hildreth in her chest, back, and hand.

Following the shooting, the victims were taken to University Hospital in Little Rock for treatment. While the victims were in the Emergency Room and under treatment, Detective Steve Moore of the Little Rock Police Department testified that he presented each victim with a six-picture photographic spread for purposes of identifying the assailant. Merdina Hildreth selected Jackson as a "look alike" from the display. The two other victims, Allison Poindexter and Carrie Nesbitt, could not identify the culprit from the photographs shown that evening.

Three days later on October 30, 1992, Detective Moore testified that he separately showed Allison Poindexter and Carrie Nesbitt a second photographic spread consisting of six pictures.[1] Both picked Jackson as the attempted murderer. When Merdina Hildreth was shown the display at this later time, she was not able to identify anyone as her assailant. Hildreth disputes Detective Moore's recollection that she viewed the two spreads on separate occasions and believes she saw both together at the hospital and that she positively identified Jackson. In the two photographic displays on October 27 and October 30, Jackson was the only man pictured twice. He was also in the same position in each spread — position two.

Jackson was charged with one count of rape and three counts of attempted murder. He was also charged as a habitual offender. Prior to trial, he filed a Motion to Suppress Identification in which he prayed that "the photo line-up identifications be sup-

---

[1]Allison Poindexter was not certain whether she was shown both displays at one time or on separate occasions.

pressed." A hearing was held and testimony was taken from Detective Moore and the three victims. The motion was denied. At the ensuing trial, Detective Moore testified to the photographic identifications by each of the three victims. Also, at trial Hildreth, Poindexter, and Nesbitt each identified Jackson in the courtroom as the man who had shot them. No objection was made at trial to the photo identification testimony of Detective Moore or to the courtroom identifications by the victims. A verdict of not guilty on the rape charge but guilty on the three counts of attempted murder followed, and the fifty-year sentences were imposed.

On appeal, Jackson asserts error by the trial court in failing to suppress the victims' photo identifications. The key premise of Jackson's argument is that he was the only person featured in both of the photospreads and that his position in each display was number two. This, he contends, was unduly suggestive, thereby rendering the photo identifications unreliable.

We note initially that there are two procedural deficiencies in Jackson's appeal. First, his motion to suppress was directed only to the photo identifications which were testified to by Detective Moore. No objection or argument that the in-court identifications by the victims were tainted was advanced by Jackson at the trial level. That point, accordingly, is not preserved for appeal. *Franklin* v. *State*, 314 Ark. 329, 863 S.W.2d 268 (1993). Secondly, Jackson did not include the two photographic displays as part of the record on appeal. The reason for this is obvious from the record. Neither Jackson nor the State introduced the photographs into evidence at the pretrial hearing on the motion to suppress. They were simply marked as exhibits for identification purposes.

We are left then to determine the suppression issue only as it relates to Detective Moore's testimony. Again, Jackson's contention is grounded on the fact that he was the only person pictured in both photo lineups and he occupied the same position in both. We are somewhat hamstrung in deciding this issue without being able to view what photos were presented to the victims on the two occasions. Detective Moore, for example, testified that the pictures of Jackson in the two spreads were different, but how different they were is a matter of speculation for

this court. The trial court obviously viewed the two spreads, and we are asked to make a decision that its finding of reliable identifications was clearly erroneous under the totality of the circumstances. This is difficult to do without the actual photographs before us. As has been stated many times by this court, it is incumbent upon the appellant to bring a record to this court which is sufficient for our review of the issue at hand. *See, e.g., Stewart* v. *State*, 316 Ark. 153, 870 S.W.2d 752 (1994); *Enos* v. *State*, 313 Ark. 683, 858 S.W.2d 72 (1993).

Be that as it may, we have on occasion reviewed the trial court's decision on the reliability of an identification even when the allegedly suggestive photographic lineup was not part of the record for our review. *See, e.g., Chism* v. *State*, 312 Ark. 559, 853 S.W.2d 225 (1993). We have also declined to do so when the allegation was that the appellant's eyes were closed at the photo lineup, and the appellant failed to abstract the pivotal photographs for our perusal. *Robinson* v. *State*, 317 Ark. 17, 875 S.W.2d 837 (1994). In reviewing the case before us, we conclude that Jackson falls far short in establishing that the two photo identifications were so suggestive as to create a substantial possibility of misidentification. That is the test. *See Matthews* v. *State*, 313 Ark. 327, 854 S.W.2d 339 (1993); *Fountain* v. *State*, 273 Ark. 457, 620 S.W.2d 936 (1981).

The two photo lineups were three days apart, and the pictures of Jackson were different in each display according to the undisputed testimony. The mere fact that an accused was given the same number in a lineup and in a photospread has been held insufficient to make a case of unreliability. *Allen* v. *State*, 297 Ark. 155, 760 S.W.2d 69 (1988). Moreover, unlike the situation in the case relied on by Jackson (*Foster* v. *California*, 394 U.S. 440 (1969)), there is no legitimate insinuation in the instant case that Detective Moore sought to influence the identification by the method he used to present the photographs. *See also Matthews* v. *State, supra.* In *Matthews*, we held under similar circumstances that the fact the accused was the only suspect included in a photo lineup and in a later group of people leaving a Con-Agra plant, both of which were viewed by the victim, was not sufficient by itself to render the identification unreliable. We reach the same conclusion in the case at hand.

■     Furthermore, the three victims had ample opportunity to see Jackson as the confrontation initially occurred under a street lamp. No one identified anyone else. The photo identifications were made within three days, and two of the victims were positive about their selection. All three positively identified Jackson in the courtroom. Considering these factors, we cannot say that the photo identifications were unreliable. *See Hayes* v. *State*, 311 Ark. 645, 846 S.W.2d 183 (1993); *Van Pelt* v. *State*, 306 Ark. 624, 816 S.W.2d 607 (1991).

Affirmed.

HOLT, C.J., not participating.