644 S.E.2d 271

The STATE, Respondent,

v.

Travis Anthony LADSON, Appellant.

No. 4232.

Court of Appeals of South Carolina.

Heard March 6, 2007.
Decided April 9, 2007.

Appellate Defender Aileen P. Clare, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney

General Harold M. Coombs, Jr., all of Columbia; and Solicitor David M. Pascoe, Jr., of Summerville, for Respondent.

KITTREDGE, J.:

Travis Anthony Ladson was convicted of first-degree burglary following a three-day trial. Ladson was sentenced on November 10, 2004, to prison for a non-parolable term of twenty-five years. Ladson timely appealed his conviction and sentence. In accordance with standard procedure, Ladson promptly requested the transcript of the trial from the court reporter. Approximately ten months later, in August of 2005, the court reporter finally disclosed that there was no record of the trial court proceedings.

Because of the complete absence of a transcript, Ladson moved this court to reverse the convictions and sentences and for a new trial. Based on the State's assurance that the record could be easily reconstructed, a judge of this court denied Ladson's motion and remanded the matter to the trial court to reconstruct the record. More than a year after the trial, the trial judge convened a hearing with trial counsel in an effort to reconstruct the record.

We now have before us what the State contends is a reconstructed record of the trial court proceedings sufficient to permit appellate review. Ladson contends the conclusory and summary nature of the purported record on appeal does not permit meaningful appellate review. Because we find the reconstructed record insufficient for meaningful review of direct appeal issues, we reverse and remand for a new trial.

## I.

On January 5, 2006, pursuant to this court's order, the trial judge held a hearing to reconstruct the record for appeal.[1]  It

---

1. As the original trial took place more than a year before this reconstruction hearing, it was obviously quite difficult to reconstruct the record. Although the hearing was orderly, it took on a conversational tone—counsel and the trial court often informally discussed their recollections of the earlier trial. In fairness to the outstanding trial judge and the parties' trial counsel, the order of this court left no option but to attempt a reconstruction of the record. As the trial court noted at the outset of the January 26, 2006, hearing, it would do the "best it can . . . to reconstruct the record."

was clear from the outset of this hearing that reconstructing the record from scratch, after such a substantial delay, would be an uphill struggle. The State presented two affidavits from witnesses and "summarized" the testimony of the other witnesses.

The information provided by the State was conclusory. The State usually prefaced its recall of witness testimony with statements like "his testimony generally would be," "he testified generally to the following," and "the next witness . . . will be by summation." Ladson took issue with the State's summary reconstruction of the record. The trial judge, noting that he no longer had his handwritten notes from the trial, typically would conclude with respect to a particular witness that the State presented "an accurate summation of the testimony," or the State's general description was "a correct summation of the testimony," or "the summation presented by the State . . . [was] a correct statement."

When the State concluded its summary of the testimony of one witness, the trial court concurred with the summary as "an accurate reflection of her testimony," and further held that the witness was "qualified as an expert in her field, and . . . the court found her testimony to be credible." The trial court then remarked, "I do not believe there was any question, at any point in time, as to the chain of evidence regarding these particular fingerprints." The State corrected the trial court and noted that the witness was not qualified as an expert and further that Ladson's trial counsel had preliminarily objected to the chain of custody. The trial court promptly agreed and explained the confusion by referring to another witness.

The State, too, had difficulty recalling the witnesses and the testimony. For example, the State had completely forgotten about one witness, whose identity was determined only by reference to Ladson's trial counsel's notes. As the Solicitor acknowledged, "the final witness that I have to admit I discovered from [Ladson's trial counsel's] notes."

There is even a dispute as to whether Ladson testified in his own defense. Ladson claims he did not testify. The trial court found otherwise, noting the "court's remembrance and

recollection that the Defendant was not credible, and did not help himself in his testimony before the jury."

The trial court appeared equally confident that the jury returned its verdict the same day it began its deliberations: "My only recollection is that, after the court answered [a question from the jury], that the jury came out relatively soon after that with a verdict." When confronted with a different recollection from Ladson's counsel (claiming the jury was excused for the day and reached a verdict the following day), the trial court responded, "I usually require the jury to stay for as long as it takes [until it] come[s] back with a verdict. I don't ever remember an occasion where I have allowed a jury to go home and come back." The trial court's recollection was proven faulty when the State called attention to the juror note dated November 9, 2004, and the jury's verdict dated the next day, November 10.

The trial court and the State are confident that Ladson made timely objections at trial and moved for a directed verdict "based upon the evidence." Presumably, the State believes these concessions enlighten Ladson and us to the specific issues to address on appeal.

On January 26, 2006, the trial court issued an "Order for the Record on Appeal."

## II.

Ladson maintains the reconstructed record does not allow for meaningful review of his direct appeal. The State disagrees and asserts this court should find the record adequate for appellate review of the claims Ladson raised at the reconstructed hearing.

It is clear from the record before us that all parties made a diligent effort to reconstruct the record. Despite these good faith efforts, the reconstructed record is largely conclusory, with testimony, objections, and the like recalled only in summary fashion. Thus, we must first determine the analytical framework for assessing the sufficiency of a reconstructed record, followed by a determination if the law warrants a new trial under the record before us.

South Carolina jurisprudence recognizes the trial court's authority to set the record for appeal. In *China v. Parrott,* 251 S.C. 329, 334, 162 S.E.2d 276, 278 (1968), our supreme court held that where a portion of the court reporter's notes were lost, the trial judge properly considered affidavits from counsel and the court reporter in reconstructing the record. *See also Koon v. State,* 358 S.C. 359, 367, 595 S.E.2d 456, 460 (2004) (recognizing a court's power to remand for a recon-struction hearing), *overruled on other grounds by State v. Gentry,* 363 S.C. 93, 105, 610 S.E.2d 494, 501 (2005); *White-head v. State,* 352 S.C. 215, 221, 574 S.E.2d 200, 203 (2002) (finding that when a transcript has been lost or destroyed, an appellate court may remand to have the record reconstructed); *Dolive v. J.E.E. Developers, Inc.,* 308 S.C. 380, 383, 418 S.E.2d 319, 321 (Ct.App.1992) (holding trial court did not err in granting property owner's request to reconstruct the record of zoning proceeding where portions of original tape of hearing were incapable of being transcribed).

The authority of the trial court in South Carolina to recon-struct the record for appellate purposes aligns our state with the majority of jurisdictions that hold "the inability to prepare a complete verbatim transcript, in and of itself, does not necessarily present a sufficient ground for reversal." *Smith v. State,* 291 Md. 125, 433 A.2d 1143, 1148 (1981); *e.g., Lewis v. State,* 354 Ark. 359, 123 S.W.3d 891, 893 (2003); *Wilson v. State,* 334 Md. 469, 639 A.2d 696, 699 (1994); *State v. Deschon,* 320 Mont. 1, 85 P.3d 756, 760 (2004); *Lopez v. State,* 105 Nev. 68, 769 P.2d 1276, 1280 (.1989); *State v. Izaguirre,* 272 N.J.Su-per. 51, 639 A.2d 343, 346 (App.Div.1994); *People v. Shire,* 23 A.D.3d 709, 803 N.Y.S.2d 309, 310 (N.Y.App.Div.2005); *State v. Quick,* 634 S.E.2d 915, 918 (N.C.Ct.App.2006); *Dickerson v. Commonwealth,* 36 Va.App. 8, 548 S.E.2d 230, 232–33 (2001).

Most jurisdictions require an appellant to demonstrate spe-cific prejudice flowing from an incomplete or reconstructed record. *See, e.g., Lewis,* 123 S.W.3d at 893 ("[I]t is the appellant's duty to demonstrate that prejudice results from the state of the record"); *State v. Williams,* 227 Conn. 101, 629 A.2d 402, 406 (1993) (holding appellant must show "specific prejudice that results from having to address his claims on appeal with the reconstructed record"); *Jones v. State,* 923 So.2d 486, 489 (Fla.2006) (noting appellant must point to

prejudice resulting from missing portions of trial transcript); *State v. Wright,* 97 Idaho 229, 542 P.2d 63, 65 (1975) (holding appellant must demonstrate "specific prejudice" resulting from failure to reconstruct record); *Simpson v. Commonwealth,* 759 S.W.2d 224, 228 (Ky.1988) (holding a showing of "prejudicial error" in having to proceed using substitute transcript is required); *Smith,* 433 A.2d at 1148 (noting "defects must be of a prejudicial character"); *Commonwealth v. Chatman,* 10 Mass.App.Ct. 228, 406 N.E.2d 1037, 1040 (1980) (holding appellant must "come forward with articulable claims [by] which the reconstruction may be judged"); *State v. Borden,* 605 S.W.2d 88, 92 (Mo.1980) (holding appellant must demonstrate prejudice); *State v. Dupris,* 373 N.W.2d 446, 449 (S.D.1985) (holding appellant must show "specific error or prejudice" resulting from failure to record entire proceedings of trial); *State v. Neal,* 172 W.Va. 189, 304 S.E.2d 342, 345 (1983) ("Generally, the failure to report some part of the proceeding will not alone constitute reversible error[;] [s]ome identifiable error or prejudice must be shown by the defendant."). "[B]efore a defendant can establish that he is entitled to a new trial on the basis of an inadequate reconstructed record, he must identify a specific appellate claim that this court would be unable to review effectively using the reconstructed record." *Harris v. Comm'r of Corr.,* 40 Conn.App. 250, 671 A.2d 359, 363 (1996). We believe our supreme court would follow a rule requiring the party challenging a reconstructed record on appeal to demonstrate prejudice flowing from an inadequate record.

■ We conclude from *China* and its progeny, combined with a review of the law of other jurisdictions, that our supreme court would require a reconstructed record on appeal to allow for "meaningful appellate review." A new trial is therefore appropriate if the appellant establishes that "the incomplete nature of the transcript prevents the appellate court from conducting a 'meaningful appellate review.' " *In re D.W.,* 171 N.C.App. 496, 615 S.E.2d 90, 94 (2005); *see also State v. Chanze,* 211 W.Va. 257, 565 S.E.2d 379, 382–83 (2002) (finding criminal defendant is entitled to meaningful appellate review of his lower court proceedings, and if this is not possible from reconstructed record, a new trial is appropriate). For a host of reasons, we find Ladson has established preju-

dice and demonstrated that the reconstructed record before us does not allow for meaningful appellate review.

We recognize that the excellent trial judge did the best he could to reconstruct this case under difficult circumstances. Approximately ten months transpired after the appeal was filed before the court reporter notified the parties (for a reason that is unclear) that her recording equipment failed and no part of the trial was recorded.[2] The court reporter's delay in disclosing the lack of a transcript made a bad situation worse, as the passage of time clearly dimmed the recall of the participants. We, too, must accept our share of the blame, for the remand order of this court required the trial court to reconstruct the record, with no option given to simply conclude that the record could not be reconstructed with the specificity to support meaningful appellate review. *Cf. Koon*, 358 S.C. at 367, 595 S.E.2d at 460 (denying request to remand for reconstruction of a post-conviction hearing after appellant failed to allege specifics regarding his assignments of error); *and Whitehead*, 352 S.C. at 221, 574 S.E.2d at 203 (remanding matter to circuit court for reconstruction hearing and instructing, "If the circuit court judge determines that reconstruction is not possible, he shall notify this Court. . . .").

The hearing to reconstruct the record for this three-day trial on a violent, non-parolable offense took place on January 5, 2006, more than a year after Ladson was convicted and sentenced. We are mindful of the tremendous workloads faced by our fine trial court judges. It is simply unrealistic and unreasonable to think that a trial judge and counsel can—under these circumstances—reconstruct a proper record that will permit meaningful appellate review, especially in light of our issue preservation rules. The continuing dispute as to whether Ladson even testified (much less the content of his purported testimony) is but one example of the trial court and counsel groping in the dark as to what actually happened at trial.

Most cases around the country addressing this subject concern situations where only a part of the trial transcript is unavailable. In many such circumstances, meaningful appel-

---

2. At oral argument, the State commented that the court reporter "used tapes that just wouldn't hold sound."

late review can occur and the rights of the parties are not prejudiced. In this case, we are essentially left with a bare bones summary of the evidence (with more remaining unknown than known) from a lengthy multi-day and fact-intensive trial that resulted in a non-parolable twenty-five year prison term.

Moreover, the fact of a missing portion of the trial transcript is usually brought to the court's attention much earlier than the year-plus delay present here. We are left with a few gratuitous references to generic motions and objections, but we do not know the context of the motions, the specific nature of the motions, and whether the challenged evidence was cumulative to other unchallenged evidence. The list of unknowns continues. In short, we are left to speculate, and we decline to do so. *See In re Rholetter,* 162 N.C.App. 653, 592 S.E.2d 237, 244 (2004) ("If a transcript is altogether inaccurate and no adequate record of what transpired at trial can be reconstructed, the court must remand for a new trial.").

The record before us does not permit meaningful appellate review. To hold this record is sufficient would guarantee the affirmance of Ladson's conviction and twenty-five-year non-parolable sentence without a genuine review. We would simply be constrained to affirm based on an insufficient record and issue preservation principles. Moreover, it would effectively foreclose any collateral challenge through post conviction relief or otherwise. We hold Ladson has demonstrated clear prejudice.

We finally remind the State that this court previously remanded this matter to the trial court for the purpose of reconstructing the record on the "assurance" by the State that this was a simple and straightforward case. The State should therefore have no problem retrying this simple and straightforward case.

## III.

For the reasons stated above, we are convinced that under the circumstances of this case the reconstructed record lacks the completeness and reliability necessary for this court to

engage in meaningful appellate review. We reverse and remand for a new trial.

**REVERSED and REMANDED.**

SHORT, J., concurs.

ANDERSON, J., concurring in result only in a separate opinion.

ANDERSON, J. (concurring in result only):

I disagree with the reasoning and analysis of the majority. The reliance by the majority on decisions from other jurisdictions is unnecessary. I respectfully concur in result **ONLY.** I **VOTE** to **REVERSE and REMAND** the convictions and sentences of Travis Anthony Ladson for a new trial.

The precedent extant in South Carolina, consisting of: *China v. Parrott,* 251 S.C. 329, 162 S.E.2d 276 (1968); *Whitehead v. State,* 352 S.C. 215, 574 S.E.2d 200 (2002); *Koon v. State,* 358 S.C. 359, 595 S.E.2d 456 (2004); and *Dolive v. J.E.E. Developers, Inc.,* 308 S.C. 380 418 S.E.2d 319 (Ct.App.1992), establishes the rule and procedure in regard to reconstruction of the record of the trial court proceedings. Our law places the burden upon the circuit judge to utilize discretion in the reconstruction proceeding. The ruling of the circuit court judge will only be reversed in the event of an abuse of discretion.

In *China:*

The defendant objects to the fact that the trial judge considered the affidavits of plaintiff's counsel and the court reporter in determining what transpired. The trial of this case was held in January 1965 and the affidavits were signed in April and May of 1967, over two years after the trial. The defendant contends that the long lapse of time since the trial should have rendered the affidavits of little probative value, especially in view of the inability of the trial judge and defendant's counsel to recall what took place and the statement by the trial judge in his previous order that the verdict of the jury apparently exonerated the defendant of the charge of recklessness. We find no error in the action taken by the trial judge.

Where there is a disagreement as to what the record on appeal should contain, the duty and responsibility of settling the question rests upon the trial judge. . . . .

In doing so he properly considered the affidavits of counsel and the court reporter as to what happened. The fact that the notes of the court reporter were lost and the trial judge had no independent recollection of the incident under inquiry did not preclude him from determining the question upon the basis of the affidavits submitted. Their probative value was for him to determine and his conclusions thereabout are binding on the court.

251 S.C. at 333–34, 162 S.E.2d at 278 (internal citations omitted).

*Whitehead* inculcates:

Petitioner sought a remand to reconstruct the record of his first PCR hearing. *See China v. Parrott, supra.* We now grant his motion and remand the case to Jasper County for a hearing to reconstruct the first PCR record. This hearing should be held within 45 days of the date this opinion is filed. If the circuit court judge determines that reconstruction is not possible, he shall notify this Court and the parties within 15 days of the reconstruction hearing. If the record is reconstructed, the parties shall notify this Court and the matter will proceed according to *King v. State, supra.*[, 308 S.C. 348, 417 S.E.2d 868]

352 S.C. at 221, 574 S.E.2d at 203.

Our supreme court in *Koon* succinctly instructs as to the judicial duty if the original trial record is deficient:

Where a transcript has been lost or destroyed, a court may remand to have the record reconstructed. See *Whitehead v. State*, 352 S.C. 215, 574 S.E.2d 200 (2002); *China v. Parrott*, 251 S.C. 329, 162 S.E.2d 276 (1968) (trial judge reconstructed the record where court reporter records were unavailable).

358 S.C. at 367, 595 S.E.2d at 460.

Finally, this court edifies in *Dolive:*

Appellants first contend the circuit court erred in allowing additional matters into the record on appeal arguing that, while Title 5 zoning cases allow supplementation of the

record, there is no such provision for Title 6 zoning cases under which this case falls. However, this case does not involve supplementation of the record. The circuit court merely allowed J.E.E. to reconstruct the record by means of an affidavit. In *China v. Parrott*, 251 S.C. 329, 162 S.E.2d 276 (1968), our Supreme Court held, where portions of stenographic notes of a trial proceeding were lost before they were transcribed by the court reporter, it was not error for the trial judge to consider affidavits of plaintiff's counsel and the court reporter in determining what transpired. Based on the fact that this matter has already been twice appealed to the circuit court and the loss of the vital portions of the record appear to have been through no fault of the respondent, we find no error in the circuit court's ruling allowing for reconstruction of the record.

308 S.C. at 383, 418 S.E.2d at 321.

The vagaries and vicissitudes of a reconstruction hearing are demonstrated with clarity in the case *sub judice*. The reconstructed record contains:

1. Affidavit of the victim, Charles Smith, given on December 21, 2005.

2. Affidavit of the crime scene investigator, Sergeant Ryan Depoppe, given on December 21, 2005.

3. Handwritten notes of the original court reporter, Hilda Jordan.

4. Handwritten notes of M. Thomas, Ladson's attorney at trial.

5. Large drawing showing the layout of Smith's home.

6. Coin box found inside Smith's home.

7. Hatchet discovered outside Smith's home.

8. Wallet found inside Smith's home.

9. Plastic Bag found inside Smith home.

10. Fingerprint samples given by Ladson.

10. Fingerprint analysis from the Charleston Police Department stating prints found on the coin box match those of Ladson.

Despite a brobdingnagian effort by the circuit judge and trial counsel, we are confronted with an epigrammatic record as it relates to appellate issues.

At oral argument, counsel was queried by the court in regard to an identification of appellate issues based on the reconstructed record. Counsel for the State was unable to identify the appellate issues with any degree of exactitude.

Because the reconstructed record is profoundly deficient in guiding the court to preserved appellate issues, I come to the ineluctable conclusion that a retrial is mandated.

I **VOTE** to **REVERSE and REMAND** the convictions and sentences of Travis Anthony Ladson for a new trial.